OPINION of the Court, bv
Judge Logan.
On the 19th May 1802, West sold to Mansell and Mort i-son i,is invention of a machine for cutting, and cutting and heading nails, except the right to use the same in Kentucky, and covenanted to proceed without loss of t}mti to ihe City of Washington, and obtain patents for his invention, and to assign the same to said Morrison and Mansell in consideration of S 9575. West accord-in^Y obtained a patent for the said invention, bearing date the 6th of July in the same year, and on the 26th, Gf sa¡{j month assigned the same to Morrison and Manse^* 9 th of July Daniel Vertner wrote to Morrison, from the City of Washington, informing hiiu that he had made inquiry as to West and his nail cutter, and found front Doctor Thornton, the keeper of the models, that the same discovery had been made» some years before, by one Perkins, who had obtained a patent for his invention. In the letter Vertner gave it as his opinion that Morrison had better have nothing to do with the machine, until he heard from him again, which he stated should be ui a few days; and that he thought Morrison had made a bad bargain, and might then exonerate himself, under the plea of West not having made an original discovery. Upon receiving this letter Morrison communicated the informática t© *377 West, who it seems unilormlv dedared that the two machines were constructed on different principles.
Afterwards W ami M modify the contradi by new articles.
M cannot have relief upon the ground that P had obtained a previous patent;
W having cor-redily delcribed the patent of Ps the iecond con-tradi being bottomed upon a corred} detail of jails, but a difference of ofi-m ni$n upen tbs fails, amounts to a compromife unmixed with fraud on the part of W»
The value of the patent not being a fubjedfc or preciie caU dilation, the contract m ufe be confidered as a chancing bargain, in which the price given* compared with the Ímall value of the thing told* furmfhes no grouRd for reicinuing a core tract free from fraud*
Jn this state of thins;®, Henry Clay, as the attorney and agent of Peacock, Wrenshaw & Co. to whom West was-indebted, applied to Moirison to accept an order from West in favor of oaid company, which Morrison refused to do, and reared that he had received information that a patent had previously been obtained for an invention for cutting nails on similar principles with that of West. Clay then suggested as his opinion that as ’Vest had obtained and assigned his patent to Morrison and Mansell, he had complied with his covenant.
In September lo'iorving, the parties entered into a second contract, varying the ten ms oí the first. By the second contract West became a joint paitucr in said invention, thereby reducing the payment (aim Morrison and Mansei1, under the hist, one third. In treating «pon tí e terms of the second contract, Morrison applied lo Clay and passed his bonds lor the debt due to said couioany irorn West, payable in lands and money, and Day executed a idease to West from said debt. Tlie settlement of this debt is stated as a part of the consideration in the second agreement with West.
Morrison afterwaids receiving farther information «pon, the interference of the two machines, and the sí-mil kude of their construction, informed Clay that he would not p iy the debt for which he had passed his bonds. Clay instirnted suit and Mon ¡son confessed judgment at law, nserv mg equity : to enjoin uhich, and cancel the contract with W est, he filed his bill, alleging the interference between the machines, the prior patent to Perkins, West's assurance s that the machines were constructed on different principles, and Clay’s opinion that the first contract would be obligatory on him, as constituting his equity.
West in his answer still insists that the machines are Konstrueted on different principles, states that he gave Mon ison a correct description of Perkins’s machine, fully explained the difference between the two, and that the second contract was entered into for the purpose of quieting controversy, and obviating all objections on account of Perkins’s patent.
*378 The first subject of inquiry which attracts the attend tion of the court, is the consideration or inducement to the second contract between the parties.
The answer to this inquiry is furnished from the circumstances of the first contract, growing out of Perkins’s prior invention and his patent for using and vending a machine of a similar nature.
Whilst the parties were in a state of disputation on the subject, the one contending that he had performed his part of the contract, and that the inventions were on different principles ; and the others that a fraud was practised on them, or the contract materially affected by a circumstance which neither party could have anticipated, and which the complaining party might have supposed would have been .an obstacle to the procurement of the patent by the other. In this situation of things, it seems from the Complainant’s own showing, that the second contract was concluded on through the adv ice of a common friend, as mutually beneficial to both parties.
This contract must be considered as compromising differences which had arisen from the first, so far as the second was fair, and brought into view a correct representation of facts.
But the complainant relies on the following points for relief under the second contract, and also from the contract entered into with Clay : 1st, The declarations of West that the machiné invented by him was constructed on different principles from that of Perkins’s ; 2dly, The high price to be given when compared with the little value of the machine ; and 3dly, The opinion of Clay, inducing him to make the second contract from an impression that the first would be ol. ligatory on him.
Upon the first ground relied on we should necessar ly be led to examine the construction of both machim * and the identity of their principles, from the opinioi and explanations given, in order to ascertain vvhethi West had imposed a fraud on the complainant by an incorrect description and false explanation of Perkins’s machine ; but from the deposition of John Bradfon who deposes that West shortly after his return from "Washington, and before the second contract was made, described Perkins’s machine to the complainant and *379 and appeared to take pains to explain it f ully , dial he had on the same day much conversation with die complainant on the subject, and informed him that he thought from the description given by West, that the two machines were on the same principle : in which opinion, he says, the complainant concurred -with him,
From this evidence it appears that the description and explanation given by West of Perkins’s machine, was such as to induce both Bradford and the complainant to form different opinions from himself with regard to the identity of the principles of the two machines. But if West correctly described and explained Perkins’s machine, and drew from thence an incorrect inference with regard to the principles and similitude of the two, whilst the complainant formed a more correct opinion touching the identity of the principles on which they were constructed, from the description given, surely he ought not now to rely on the erroneous inference of the other, drawn from, premises correctly furnished, as ground for his relief. The court cannot say that the description of Perkins’s machine was false. From the description and information then given, the complainant formed the same opinion that he now urges to be relieved from his contract subsequently made, if the machines were incorrectly described as dissimilar, we cannot suppose that description deceiving to the complainant, ,who it seems formed therefrom art opinion of their identity in principle. If the secón# contract were not induced from the apprehension of an ; ’..erference in the machines, we should find great difficulty in accounting for its inducement. But if it were from such an apprehension, if cannot now form a proper subject for relief in chancery. The premises assumed in argument, that the second contract was entered into , under false impressions made by West, do aor seem, warranted ; and consequently die doctrine relied on as apply lug to such cases is inapplicable t§ this.
Upon the subject of the price stipulated to be paid for the benefit of tiiis invention, it meed only be observed, that the snbjt et matter of the contract from its nature rendered impracticable a precise and definite calculation ol its value ; whether it would succeed or JWt, was uncertain and depended on future experiment.. *380 It was therefore the subject of a chancing bargain, and a bargain which might be beneficial, but happens to become a losing one, ought for the same reason to remain obligatory, if it be free from fraud.
With regard to the last point made in the cause, proceeding from the opinion of Mr. Clay, which the com plainant alleges as one o) the -reasons that induced him to enter into the second contract, this can only be understood as intended to reach that branch of the causi in which Clay is a party, in the event of the contract with West being cancelled.
If Clay stands unconnected with West in a fraud by misleading and deceiving Morrison into the second contract, in order to get clear of the fraud imputed in the first, (and that he does there is not the shadow of evidence to the contrary) we cannot conceive the principle by which the contract of West can by his opinion be affected. If an erroneous opinion of West himself upon facts and circumstances correctly detailed, ought not to invalidate this contract, a fortiori the opinion o a third person, not a party to the contract, ought not. The price of the second contract does not appear to thi. court to have been considered or intended by either party as staked either on the opinion of West with re gard to a difference in the principles of the machines, or on the correctness of Clay’s opinion.
The decree as to Clay in the court below is to be af firmed with costs, and so far as it respects West it is ti be reversed with costs : the cause remanded for the dismission of the bill with costs.